## Commonwealth v. Wien

*Martin K. Pitkow*, for petitioner.
*Steven M. Dranoff*, for defendant.

BODLEY, *J.*, January 4, 1977—Defendant has appealed from an order of support entered October 7, 1976, which increased the amount of a temporary order entered against him on September 4,

116

1975. In view of the nature of the questions defendant intends to raise on appeal a full statement of the history of the case is required.

The matter first came on for hearing before the undersigned on September 4, 1975, upon petition of defendant's wife, a resident of New York State, in which she sought support for herself and minor child, born May 23, 1972, under the provisions of the Revised Uniform Reciprocal Enforcement of Support Act of December 6, 1972, P.L. 1365, 62 P.S. §2043-1 et seq. As is usual in such cases a dearth of information and no depositions were forwarded to the responding state. The petition merely recited the separation of the parties in August 1974, the fact that no support had been received by petitioner since March 4, 1975, and that she was unemployed and receiving public assistance in the amount of $81.65 bi-weekly. She sought the sum of $150 per week for herself and child.

At the time of hearing, petitioner was not present but her interests were represented by an assistant district attorney. Defendant was present with counsel. He testified that he had been, in fact, paying the sum of $40 bi-weekly for some time past and had made certain purchases and gifts for the benefit of his son. He also testified that he maintained health insurance for the benefit of his son and that petitioner was residing in adequate fashion with her parents in New York. He said that his wife had deserted him without cause, detailing the events both prior and after the separation as well as his efforts toward reconciliation. According to defendant, notwithstanding his wife's unemployment she had an earning capacity, which she chose not to use, as a medical technician.

From the financial data secured prior to the hearing by the Bucks County Domestic Relations Officer and from testimony adduced at hearing, it appeared that defendant, as an attorney for the Internal Revenue Service, had gross earnings from his employment of $1,936.19 per month, netting $1,147.12 after deductions. In addition, he stated that he had $12.50 per month income from a mortgage held jointly by himself and his wife, leading to a total of $1,159.62 per month. He further testified that his total weekly expenses were $442.45 or approximately $1,917 per month (using the formula of 4 and 1/3 weeks per month) which sum is obviously in excess of his purported income. On the basis of the information supplied the domestic relations officer a recommendation was submitted to the hearing judge, as is our practice, that the sum of $45 per week be entered against defendant toward the support of his minor child. However, after hearing defendant's testimony and reviewing the financial data then available, the undersigned hearing judge determined that an order of $70, bi-weekly, was a more nearly appropriate sum and directed that this sum be paid. The court accepted defendant's liability testimony and found that petitioner was not entitled to support for herself under the evidence then available. As is the custom, the hearing judge directed that the notes of the proceeding be transcribed and forwarded to the inititating state in order to give petitioner an opportunity to request a further hearing and offer testimony in support of her petition. No appeal was filed from the order thus entered on September 4, 1975.

On February 4, 1976, a petition entitled "petition for increase in support order" was filed by counsel

on behalf of petitioner. Therein, it was alleged that evidence presented by defendant at the September 4, 1975, hearing was inaccurate and untrue both as to his earnings and expenses. Petitioner sought further hearing in order to secure an increase in the order entered for her son. She sought no support for herself. In response to the petition, defense counsel filed a petition and rule to dismiss the petition filed by petitioner alleging that no hearing should be held because, (1) petitioner had failed to appeal the September 4, 1975, order, (2) no new issues other than "vague and unsubstantiated" allegations as to the truth and accuracy of defendant's testimony concerning his earnings and expenses had been raised and, (3) no change in circumstances had been set forth. The hearing judge dismissed defendant's petition without hearing, advising counsel that the wife's petition would be considered as one for re-hearing inasmuch as she had not been present or represented by counsel at the initial hearing on September 4, 1975. A conference under local rules of court was thereupon directed to be held before the Bucks County domestic relations officer. . . .

Following the conference before the domestic relations officer on April 23, 1976, he recommended that the order be increased to $48 per week toward the child, or $96 bi-weekly.

Thereafter hearing was held on May 10, 1976. At that hearing petitioner testified that she was then employed as a medical secretary netting $121.70 per week, being no longer on public assistance. The parties were then divorced. She testified that defendant had taken all stocks and bonds and bank accounts before separation; that the child had allergy problems requiring continuing medical atten-

tion; that she paid $165 per month for her son's nursery school so that she could maintain her employment; and that she had borrowed from time to time from her parents in order to meet her expenses, stating that she then owed "thousands of dollars."

On the other hand, defendant testified that his annual gross income was then $25,198 and revealed for the first time under examination that he had an additional $825 income per semester received from his position as an adjunct professor at Camden Community College. The May 10, 1976, hearing was then aborted by reason of defendant's having failed to produce financial data requested through his counsel and by way of a subpoena which petitioner's counsel had been unable to serve notwithstanding repeated attempts to do so. Accordingly, the case was continued to a later date and defendant and counsel were directed to furnish petitioner's counsel with the sought-after financial data.

A third hearing was held on September 29, 1976, at which time certain of the information sought by petitioner's counsel was produced.

At the conclusion of the hearing on September 29, 1976, decision was reserved in order that the hearing judge might review his notes from the prior hearings and the financial data which had been submitted to the domestic relations officer before rendering a decision. Having done this, an order was entered October 7, 1976, which speaks for itself. In essence it was found that complete financial data had not been made available to the court on September 4, 1975, the date of the initial hearing and that the bi-weekly order of $70 then entered be increased to the sum of $96 bi-weekly effective as

of May 10, 1976, the date of the second hearing. This retroactive date was fixed inasmuch as final disposition of the matter was delayed only because of defendant's failure to respond to the request to produce his tax records and other financial data. It was felt that in equity and justice the petitioner should not be penalized for the delay resulting from defendant's willfulness. Bearing in mind the new disclosures made in September, and the fact that the domestic relations officer, following conference with both parties and their counsel on April 23, 1976, had recommended that the order for the child be increased to $48 per week (or $96 bi-weekly), it may reasonably be assumed that the order entered on October 7, 1976, in the sum of $96 bi-weekly, would have been entered on May 10 had the hearing been concluded on that date.

Defendant challenges the October 7, 1976, order on four grounds: First, it is urged that the court should not have considered the document entitled petition for increase in support order since the same, in defendant's view, failed to set forth changes in circumstances such as would justify modification of the order of September 4, 1975. We disagree, noting that section 20 of the Revised Uniform Reciprocal Enforcement of Support Act, 62 P.S. §2043.22, provides:

"If the obligee is not present at the hearing and the obligor denies owing the duty of support alleged in the petition or offers evidence constituting a defense the court, upon request of either party, shall continue the hearing to permit evidence relative to the duty to be adduced by either party by deposition or by appearing in person before the court."

It is the view of the hearing judge that the order

entered on September 4, 1975, was temporary in nature only by reason of the above-quoted section and the fact that the issue of liability to the wife had been raised and disposed of unfavorably to her. It is also our view that notwithstanding the liability question such an order should always be considered temporary and subject to re-hearing inasmuch as the determinations by the hearing judge in such cases are in essence made ex parte. In the absence of contravailing testimony there is little room to make credibility findings as to need or ability to pay. And the very nature of the time-consuming processes under which such a petition is brought before the court and the decision transmitted to the initiating state is such that, were it not so treated, petitioner is not likely to be even aware of the fact of the order until following the appeal date. As the hearing judge stated (N.T. p. 2, May 10, 1976) on this subject:

"I felt that in justice and fairness to all concerned, we would treat it as a re-hearing so that we might have first-hand testimony from the petitioner." We believe that this is a proper interpretation of section 20 quoted above.

Defendant next complains that the court erred in granting the "re-hearing" because the September 4, 1975, order had not been appealed to the Superior Court. We believe that our discussion above amply responds to this further allegation.

The third basis for complaint is defendant's contention that the $96 bi-weekly order is not supported by the record before the court, and is "arbitrary and capricious" because it appears to be based upon the recommendation of the domestic relations officer. In response to this latter sugges-

tion, it should be noted that the trained and experienced domestic relations officers of this county who confer with the parties and make recommendations to the court make such recommendations only on the basis of a full examination into both sides of the question. Very frequently, at the hearing, the hearing judge is quite satisfied that the recommendation of the domestic relations officer is a fair and reasonable one and accepts it. On other occasions, as illustrated by our first order in this case, the recommendation is rejected. This is not done however before the hearing judge personally analyzes the testimony and other data before him. Further, it appears ludicrous for this defendant to suggest that his financial position is such that the sum of $48 weekly, or $96 bi-weekly, is beyond his ability to pay. A cursory review of the financial data submitted to the domestic relations officer and the testimony proffered, particularly that received after petitioner was represented by counsel and defendant subjected to informed cross-examination, will reveal that defendant is fully able to pay a sum much in excess of the amount of the order.

Finally, defendant complains that the order was made retroactive to May 10, 1976. We have discussed this briefly above. In this connection the appellate court's attention is directed to pages 39-45 of the notes of testimony respecting the need for certain financial data not produced and without which a fair inquiry into the probity of defendant's testimony could be made. We believe that the fact that additional evidence of defendant's ability to pay was elicited from him at the September 29, 1976, hearing reflects, in itself, the justification for the continuing of the hearing and for direction that

the order become effective as of the date of the prior hearing, May 10, 1976. It is true, unlike the provision found in section 7 of the Pennsylvania Civil Procedural Support Law of July 13, 1953, P.L. 431, 62 P.S. §2043.37, that there is no specific authorization spelled out in the statute with respect to the order to be entered under the Revised Uniform Reciprocal Enforcement of Support Act. Whereas the former permits an order to become effective from the date of the filing of the complaint, the latter, in section 24, 62 P.S. §2043.26, does not. However, it is pointed out that the order of the court was not made retroactive to the date of the filing of the complaint, nor indeed to the date of the first hearing, September 4, 1975, which in justice under the circumstances, it might have been. Nonetheless, section 24 does provide that:

"If the responding court finds a duty of support it may order the obligor to furnish support *or reimbursement therefor. . . .* " (Emphasis supplied.)

Certainly the effect of our order of October 7, 1976, merely represents "reimbursement" to petitioner of the additional sum to which the minor child was justly entitled as of May 10, 1976.

Technical niceties aside, were we merely to apply the law with respect to modification of support orders, we would have no hesitancy in finding in this case that there has been proof of material change in the circumstances of the parties affecting their respective positions, at least insofar as the same have been disclosed upon the record. A change in an order may be made at any time a change of circumstances is demonstrated if it materially affects the defendant's ability to pay. And too much

emphasis should not be placed on so-called "earnings." The court must look beyond actual earnings and consider the earning power of the husband as well as the nature and extent of his property and financial resources: Shuster v. Shuster, 226 Pa. Superior Ct. 542, 547, 323 A. 2d 760 (1974). The modest modification here made is supported, we believe, under these principles.